**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**TITUSVILLE-COCOA AIRPORT AUTHORITY,**

**Appellant,**

**v.** **Case No.: 6:25-cv-01074-AGM**

**ISLANDS INTERNATIONAL GROUP, INC.,**

**Appellee.**

---

**OPINION**

Appellant Titusville-Cocoa Airport Authority (the "Airport Authority") appeals an Order Granting Motion to Assume Lease of Non-Residential Real Property, in which the bankruptcy court ruled that a Brevard County Court judgment that explicitly said, "the Lease has been deemed terminated" did not really mean that the lease had been terminated for the purposes of 11 U.S.C. § 365. Appellee Islands International Group, Inc. ("Islands") makes various arguments in support of the bankruptcy court's ruling, but none are persuasive.

I.

Resolving a years-long landlord-tenant dispute between the Airport Authority and its tenant, Islands, the County Court of the Eighteenth Judicial Circuit in and for Brevard County held a two-day bench trial on June 11 and 13, 2024. At the conclusion of that bench trial, the Brevard County Court judge orally ruled and invited submission of final judgments consistent with that ruling.

Both parties submitted final judgments. Although Islands now takes the position that the lease was never terminated, Islands concedes that the proposed final judgment Islands submitted to the Brevard County Court included language that the "Lease has been deemed terminated." The Brevard County Court then entered a final judgment on August 2, 2024. While the final judgment contains numerous references to termination of the Lease, the critical portion is the conclusion that "[a]s the Lease has been deemed terminated, Plaintiff is entitled to the relief sought in Count I of the Complaint."

After the Brevard County Court entered the final judgment, Islands appealed it to Florida's Fifth District Court of Appeal. Yet the appeal to the Fifth District was stayed when Islands filed a voluntary petition under Chapter 11 with the United States Bankruptcy Court in the Middle District of Florida. Islands then filed with the bankruptcy court its Motion to Assume Lease of Non-Residential Real Property in November 2024, and the bankruptcy court conducted a trial on that motion in February 2025.

At the trial on the motion, the Airport Authority urged the bankruptcy court to abstain from ruling on whether the lease was terminated. It urged the bankruptcy court to recognize that lease termination was an issue of state law and the ruling Islands asked the bankruptcy court to make could overrule a specific finding in the Brevard County Court judgment. Islands argued that the bankruptcy court was not being asked to overturn or modify the state court judgment. Instead, Islands argued that it was merely asking the bankruptcy court to determine "the effect of the judgment," consistent with the Eleventh Circuit's opinion in *In re Dorand*, 95 F.4th 1355 (11th Cir. 2024).

In its oral ruling, the bankruptcy court ultimately sided with Islands. It concluded that deciding whether the Brevard County Court judgment's conclusion that "the Lease has been deemed terminated" meant what it explicitly said was not the same thing as overruling or modifying a judgment of the state court on a matter of state law.

This appeal followed.

II.

Both parties agree that this case involves an unsettled question in bankruptcy law over the interpretation of Florida law on the issue of lease assumption under Section 365 of the bankruptcy code. Under 11 U.S.C. § 365(c)(3), a bankruptcy trustee "may not assume or assign any executory contract or unexpired lease of the debtor . . . if" the lease is of "nonresidential property and has been terminated under applicable nonbankruptcy law prior to the order for relief."

III.

A.

Article IV, Section 1 of the United States Constitution requires that "[f]ull Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof." Art. IV, § 1, U.S. Const. 28 U.S.C. § 1738 in turn requires that records of state court judgments "shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."

Article III of the United States Constitution vests the judicial power of the United States "in one Supreme Court, and in such inferior courts as the Congress may from time to time ordain and establish." Art. III, § 1, U.S. Const. Congress in turn establishes the jurisdiction of inferior federal courts in the United States Code. *See, e.g.*, 28 U.S.C. §§ 158 (bankruptcy appeals), 1331 (federal question), 1332 (diversity), 1367 (supplemental jurisdiction).

Article I, Section 8, Clause 4 of the United States Constitution grants Congress the power to establish "uniform Laws on the subject of Bankruptcies throughout the United States." Art. I, § 8, cl. 4, U.S. Const. Congress in turn enacted the bankruptcy code, including the provision at issue. 11 U.S.C. § 365(c)(3).

B.

"The power to revise or modify another court's judgment or decree has been recognized as an exercise of appellate jurisdiction from before the ratification of the Constitution." *T. M. v. Univ. of Maryland Med. Sys. Corp.*, 146 S. Ct. 1739, 1755 (2026) (Thomas, J., concurring). Consistent with federalism principles, "[t]he *Rooker–Feldman* doctrine makes clear that federal district courts cannot review state court final judgments because that task is reserved for state appellate courts or, as a last resort, the United States Supreme Court." *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009) (citing *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983)). This is based on the "two closely related bases of reasoning" behind the *Rooker* and *Feldman* decisions. *T.M.*, 146 S. Ct. at 1747. "The first is that, when plaintiffs 'essentially invit[e] federal courts of first instance to review and reverse unfavorable state-court judgments,' they are seeking an exercise of appellate jurisdiction." *Id.* The second base of

reasoning is that appellate jurisdiction to reverse or modify a state court judgment belongs exclusively with the United States Supreme Court. *Id.*

While on the one hand inferior courts are cautioned that the doctrine is limited, *see Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005), on the other hand failing to abide by the doctrine amounts to exercise of judicial power that the inferior court lacks. *T.M.*, 146 S. Ct. at 1747–48. Ultimately, within the "narrow ground occupied by *Rooker-Feldman* . . . the [Supreme] Court has repeatedly reaffirmed its rule." *Id.*

If a case falls within the purview of the *Rooker-Feldman* doctrine, the doctrine "require[s] 'dismiss[al] for want of subject-matter jurisdiction'" *id.* at 1748 and, for that reason, even if not raised by the parties an inferior federal court must consider whether the case is (1) brought by a party who lost in state court, (2) complaining of injuries caused by a final state court judgment, (3) involving a judgment entered before the district court proceedings commenced; and (4) inviting the district court to review and reject that judgment. *May v. Morgan Cty.*, 878 F.3d 1001, 1004 (11th Cir. 2017).

When, as here, the dispute over the doctrine's application centers on whether the inferior federal court is asked to "review and reject" a state court judgment, the inferior federal court must consider whether the claim raised in a federal court is "inextricably intertwined" with a state court's judgment. This turns on whether prevailing on the claim "would 'effectively nullify' the state court judgment" or if the claim before the court can only succeed "to the extent that the state court wrongly decided the issues." *Casale*, 558 F.3d at 1260.

Just as the limited nature of an inferior federal court's jurisdiction is a matter of United States constitutional law, the jurisdiction of a Florida state court to correct any perceived errors

in the judgment of a Florida court is a matter of Florida constitutional law. According to Florida Constitution, Florida's district courts of appeal are assigned the task of error-correction in the judgments of lower Florida courts. Art. V, § 4(b)(1), Fla. Const. ("District courts of appeal shall have jurisdiction to hear appeals, that may be taken as a matter of right, from final judgments or orders of trial courts, including those entered on review of administrative action, not directly appealable to the supreme court or a circuit court. They may review interlocutory orders in such cases to the extent provided by rules adopted by the supreme court.").

Under the Florida Constitution, the Florida Supreme Court has the power to make rules governing practice and procedure in Florida's courts. Art. V, § 2, Fla. Const. Consistent with its constitutional power to make rules of procedure, the Florida Supreme Court promulgated Rule 1.540 of the Florida Rules of Civil Procedure. Rule 1.540 provides a process by which a court may correct or set aside a final judgment, degree or order. Rule 1.540, Fla. R. Civ. P.

IV.

A.

If the *Rooker-Feldman* doctrine applies, then the judgment of the Brevard County Court should have been given full faith and credit in the bankruptcy court. The bankruptcy court serves no error-correcting function, and it is not within its power to correct, modify, or narrow what a state court judgment explicitly states.

B.

Islands offers two arguments that the *Rooker-Feldman* doctrine did not require the bankruptcy court to abstain. First, Islands argues that the *Rooker-Feldman* doctrine applies only when the state court proceedings have ended. Because Islands filed a notice of appeal to the Fifth District and that appeal remained pending when Islands filed this petition, Islands concludes that the doctrine does not require abstention here. For this proposition, Islands cites *Nicholson v. Shafe*, 558 F.3d 1266 (11th 2009).

Islands' first argument against abstention fails because the United States Supreme Court recently abrogated *Nicholson* in *T.M. v. University of Maryland Medical Sys. Corporation*, 608 U.S. ---, 146 S.Ct. 1739 (Jun. 18, 2026). In *T.M.*, the Supreme Court made clear that it was unwilling to endorse the rule advanced in *Nicholson*. It held that a rule that limited *Rooker-Feldman* to only those instances in which the state appellate process had concluded would "create anomalous outcomes and undermine the federalism principles upon which the [*Rooker-Feldman*] doctrine rests" because "allowing federal district courts to review state-court judgments while they are on appeal in the state-court system would undermine the '[c]ooperation and comity' on which our federal system is built." *Id.* at 1751; *see also id.* at 1754–61) (Thomas, J., concurring) ("When you lose in trial court, you go to an appeals court. The so-called *Rooker-Feldman* doctrine reflects that commonsense understanding. . . [and] [a]s 'creatures of a distinct government,' 'state courts are not, in any sense of the word, inferior' to inferior federal courts.").

Second, Islands argues that *Rooker-Feldman* does not require abstention because Islands was not asking the bankruptcy court to correct or modify the Brevard County Court judgment;

it merely asked the bankruptcy court to determine the *effect* of the words in the judgment. For this proposition, Islands relies on the Eleventh Circuit's opinion in *Dorand*, 95 F.4th 1355 (11th Cir. 2024).

Islands' second argument against abstention fails because nothing about *Dorand* holds that an inferior federal court has the authority to ignore the explicit text of a state court judgment by simply pronouncing that the "effect" of those words is something different than what the words plainly say. In fact, *Dorand* was clear that it could not stand for such a proposition. The Eleventh Circuit took care to say that *Dorand* did not implicate the full faith and credit statute because Dorand "never asked the bankruptcy court or this Court to *ignore* the judgment." *Id.* at 1366. Yet, unavoidably, that is what Islands convinced the bankruptcy court to do here.

C.

In applying the *Rooker-Feldman* doctrine, a federal court will analyze whether the case is (1) brought by a party who lost in state court, (2) complaining of injuries caused by a final state court judgment, (3) involving a judgment entered before the district court proceedings commenced; and (4) inviting the district court to review and reject that judgment. *May*, 878 F.3d at 1004. This is the precise scenario before the Court now. Islands lost in the state court, then brought this action. Islands complains about a state court judgment that was entered before these proceedings commenced. And Islands asked the bankruptcy court to reject the explicit language of the state court judgment.

In determining whether Islands' argument to the bankruptcy court invited the bankruptcy court to review and reject the Brevard County Court judgment, the analysis of that

question turns on whether (1) the Brevard County Court actually adjudicated the issue of termination; or (2) the issue of the lease's termination is "inextricably intertwined" with the state court judgment. *Id.* The answers to these questions is yes and yes.

Neither party has pointed to an applicable statutory definition of "terminate" in the bankruptcy code. Even so, the ordinary meaning of the word "terminate" is "[t]o put an end to; to bring to an end" or "[t]o end; to conclude." *Terminate*, Black's Law Dictionary (12th ed. 2024). Considering this definition and the plain language of the Brevard County Court judgment, the Brevard County Court judgment actually adjudicated the termination. First—and this should have been dispositive—the Brevard County Court judgment explains that it adjudicated that issue because the judgment states that "the Lease has been deemed terminated." Second, even if the bankruptcy court had been free to ignore the plain language of the judgment and assume that the judgement meant something other than what it said, whether the lease was terminated is clearly inextricably intertwined. This is evident from the concluding two sentences of the final judgment: "As the Lease has been deemed terminated, Plaintiff is entitled to the relief sought in Count I of the Complaint. Defendant shall have 90 days from the entry of this judgment to vacate possession of the Leased Premises, failing which a writ of possession may be issued." Considering the use of "as" in this precise grammatical context, the ordinary meaning of the word is "[f]or the reason that" or "because." *See As*, The American Heritage College Dictionary (3d ed. 1993) (defining "as" as "[f]or the reason that; because"). Unavoidably, when consideration is given to the ordinary meaning of the words in the Brevard County Court judgment, the termination of the lease was both

actually adjudicated and inextricably intertwined with the outcome of the judgment, which was that the Airport Authority was entitled to the relief sought in Count I of the Complaint.

V.

Even if inferior federal courts had the authority to correct the errors in state court judgments (they don't) and even if this inferior federal court saw error to be corrected (and nothing about this discussion should suggest that it does), a basic doctrine applied in error-correcting courts counseled against granting Islands' motion.

"The invited error doctrine stands for the common sense proposition that someone who invites a court down the primrose path to error should not be heard to complain that the court accepted its invitation and went down that path." *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1213 (11th Cir. 2011). In Islands' own brief, it acknowledges that the language "the Lease has been deemed terminated" appeared in the final judgment Islands proposed to the Brevard County Court. Islands cannot now be heard to argue that the words "the Lease has been deemed terminated" do not really mean that the lease was deemed terminated.

Because it has no error-correcting role in the review of the Brevard County Court judgment, this Court expresses no opinion about whether there are inconsistencies between the oral ruling and written judgment. It merely notes that the Brevard County Court judge did an exemplary job of managing a challenge any current or former state court trial judge would recognize, which is the task of respectfully articulating the reasoning for a complex decision while being peppered with interruptions and arguments from an attorney who, for whatever reason, failed to appreciate that the appropriate time for those arguments had passed. Among others, the Florida Supreme Court has adopted rules like Florida Rule of Civil Procedure 1.540,

which afford litigants an appropriate avenue through which to raise arguments about a trial court's judgment once it has been entered. If this Court had any error-correcting function related to the Brevard County Court judgment (and again, it doesn't have that function and it expresses no opinion about whether an error exists), it would have been difficult to sympathize with arguments about any perceived "lack of clarity" in an oral ruling when the complaining party engaged in the type of conduct that is evident from the transcript of the Brevard County Court hearing.

VI.

For the reasons stated here, the Order Granting Debtor's Motion to Assume Lease of Non-Residential Real Property is **REVERSED**.

**DONE** and **ORDERED** in Chambers in Orlando, Florida, on this July 23, 2026.

**ANNE-LEIGH GAYLORD MOE**
UNITED STATES DISTRICT JUDGE